IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-00665-WYD-KLM

JENELL KLIESEN,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MORGAN,

    Defendant.

## ORDER

THIS MATTER is before the Court on Defendant The Board of County Commissioners of the County of Morgan's Motion for Summary Judgment filed March 3, 2007. That motion seeks summary judgment on Plaintiff's claim under the Americans with Disabilities Act ("ADA").

More specifically, the Board of Count Commissioners of Morgan County ("Morgan County" or "The Board") asserts that summary judgment is proper because: (1) Ms. Kliesen is not disabled within the meaning of the ADA because no one at Morgan County perceived Ms. Kliesen as disabled from a substantial class of jobs; (2) Ms. Kliesen's ADA claim fails because any alleged perceived disability of Ms. Kliesen had nothing whatsoever to do with Ms. Kliesen not being promoted to Accounting Manager; (3) Ms. Kliesen's voluntary resignation from her employment with Morgan County precludes her recovery of any economic damages under the ADA. Plaintiff

denies these allegations and asserts that Plaintiff was perceived as disabled based on her past extended absences for kidney related complications during pregnancy, dialysis treatments and subsequent kidney transplants.

I. Background

This case arises out of Plaintiff Jenell Kliesen's employment with the Defendant Morgan County. More specifically, this case is a suit alleging a violation of the ADA in which the Plaintiff claims that she was denied the opportunity to apply for a position and denied a promotion to that position based upon Defendant's perception of her as disabled. Plaintiff commenced employment for the Defendant in 1999 as a bookkeeper in the Morgan County Department of Health Services' Child Support Enforcement Unit, and became a Senior Accounting Clerk in February 2001. Suzanna Dobbins served as Accounting Manager and supervised Plaintiff; and Michelle Covelli, Financing and Accounting Director, supervised Ms. Dobbins and acted as Plaintiff's second-line supervisor.

On October 22, 2002, while pregnant, Plaintiff was hospitalized with kidney failure. On November 8, 2002, Plaintiff applied for medical leave with Morgan County, retroactive to November 1, 2002, due to "complications of pregnancy, high blood pressure, kidney disease, [and] diabetes." Plaintiff's request for medical leave was approved. Plaintiff remained in the hospital until December 2002, and in the interim, gave birth to her daughter. Plaintiff remained on maternity leave until March 2003.

In June of 2003, Plaintiff began twice weekly kidney dialysis on Tuesdays and Saturdays, requiring her to miss an entire day of work every Tuesday. On June 18,

2003, Ms. Covelli sent a memo to the Board requesting permission for a retiring employee to donate unused sick leave, totaling 813.7 hours to Plaintiff. In support of this request, Ms. Covelli wrote, "Jenell has worked every day that she is able and she is very productive." The Board approved Ms. Covelli's request.

On February 2, 2004, Plaintiff requested medical leave from February 13, 2004 through March 8, 2004 to undergo kidney transplant surgery and her request was granted. On February 14, 2004, Plaintiff underwent kidney surgery; she was later released from the hospital on February 17, 2004. On March 2, 2004, Plaintiff's nephrologist wrote a note stating that Plaintiff could return to part-time work as tolerated with no heavy lifting. The Board allowed Plaintiff to return to work on a part-time basis on April 1, 2004. Plaintiff returned to work on a full-time basis on April 11, 2004.

Plaintiff asserts that despite her frequent medically related absences she was very familiar with much of Ms. Dobbins' Accounting Manager position. Plaintiff further claims that Ms. Dobbins trained Plaintiff in every aspect of her job and that when Ms. Dobbins was on vacation Plaintiff filled in for her. Ms. Dobbins stated that Plaintiff was the only one of her clerks able to perform her job functions when she was gone and the only one of her clerks whom acted in her absence. Ms. Dobbins resigned from her position as Accounting Manager on June 14, 2004. Defendant claims that following the resignation of Ms. Dobbins the duties of the Accounting Manager position were revised to include accounting responsibilities for both the Human Services and Central Services Departments.

On June 15, 2004, Ms. Covelli promoted Mari Oskarson, a Senior Accounting Clerk in Morgan County's Central Services Department, to fill the Accounting Manager position previously held by Ms. Dobbins.[1] Defendant claims that prior to Ms. Dobbins resignation, Ms. Covelli had already decided that if Ms. Dobbins ever left she would promote Ms. Oskarson to the Accounting Manager position. Defendant further asserts that Ms. Covelli did not even consider Plaintiff for the Accounting Manager position before promoting Ms. Oskarson.

Also on June 15, 2004, Plaintiff resigned from her position as Senior Accounting Clerk, after learning that Ms. Oskarson was promoted to the Accounting Manager position vacated by Ms. Dobbins.[2] Plaintiff admits that following her resignation, on June 15, 2004 she met with the Board to discuss Ms. Oskarson's promotion. Plaintiff denies Defendant's assertion that the Board encouraged her to remain in the employment of Morgan County. Plaintiff contends that two days later, Ms. Covelli sent an e-mail to Leonard Bottorf expressing her reasons for denying the promotion to Jenell Kliesen stating,

> ... Mari Oskarson is taking Suzanna's positions and she and I are set up to go to the TRAILS training on July 30th. However I am sure we can't cram enough in before Suzanna leaves and we also lost one other staff member who was upset they did not get Suzanna's position. I know Suzanna felt that person was qualified but, I don't feel they were up to task - even though they had experience in human services fund accounting. *The person was never here - she had a lot medical problems and I don't think she would have survived my management style!* I want

---

[1] The position was filled without internal or external job advertisement.

[2] This fact has been admitted by Plaintiff in her Response to the Summary Judgment Motion.

4

> someone who will help me integrate this office so that we are not "social services" and "other funds.... Def.'s Mot. Summ. J. Ex. A-25 (emphasis added).

Plaintiff also asserts that Ms. Covelli subjected Ms. Kliesen to disparate treatment by denying her the opportunity to come into the office on Saturdays to make up absences during the period she was taking time off for dialysis treatments while permitting at least three others non-management employees to do so after hours. Additionally, Ms. Dobbins states the she believed that Ms. Covelli discriminated against and had an inappropriate attitude toward Plaintiff's medical absences. The Defendant denies these allegations.

Plaintiff claims that she had worked very hard to learn the Accounting Manager job, had missed as little work as possible while on dialysis, and had despite her absences kept on learning the job. Plaintiff claims that Defendant's failure to promote her to the job for which she believed she was being groomed, left her emotionally distressed, depressed, humiliated, feeling inadequate and unable to go out in public. Defendant asserts that Ms. Oskarson was promoted to a different position than the one previously performed by Ms. Dobbins, for reasons that had nothing to do with Plaintiff's illness or any perception that she was disabled.

II.     Standard of Review

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter

5

of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* (quotation omitted).

III. Whether Plaintiff is Disabled Under the ADA

    A. <u>Prima Facie Case Under the ADA</u>

Defendant asserts that Plaintiff Jenell Kliesen is not disabled within the meaning of the ADA because she cannot establish that she was precluded from performing a class of jobs or a broad range of jobs in various classes. To establish a claim under the ADA, Plaintiff must demonstrate that: (1) she is disabled within the meaning of the ADA; (2) she is qualified, in that she is able to perform the essential functions of the job with or without reasonable accommodation, which she must describe; and (3) the Defendant discriminated against her in their employment decision (i.e. the advancement of employee) because of her alleged disability. *See Sutton v. United Air Lines*, 130 F.3d 893, 897 (10th Cir. 1997); *see also White v. York International Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995); *Mowat-Chesney v. Children's Hospital*, 917 F. Supp. 746 (D. Colo. 1996).

        1. <u>Disability Under the ADA</u>

6

First, I will address the first element of the prima facie case under the ADA, whether Plaintiff is disabled within the meaning of the ADA. The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Sutton*, 527 U.S. at 478 (quoting 42 U.S.C. § 12102(2)); *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004) (citing 42 U.S.C. § 12102(2)). In other words, "to fall within this definition one must have an actual disability . . . , have a record of disability . . ., or be regarded as having one. . . ." *Sutton*, 527 U.S. at 478. The determination as to whether there is a disability " is an individualized inquiry." *Id.* at 483. It must be decided on a case-by-case basis.

### 2. Physical or Mental Impairment

In this case, the Plaintiff claims that the Defendant failed to promote her to the position of Accounting Manager for no other reason than being regarded as having a substantially limiting impairment. A plaintiff has the option of clarifying his or her position at the pleading stage or waiting until trial to prove with particularity the impairment and major life activity he or she asserted are at issue. *Bristol*, 281 F.3d at 1157.

In order to state a claim under the ADA, a plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment. *Bristol*, 281 F.3d at 1157 (quoting *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1232 (10th Cir. 1999)). The supporting regulations define a physical

7

impairment as any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskelatal, special sense organ, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine. 29 C.F.R. § 1630.2(h). A mental impairment is any mental or psychological disorder, such as mental retardation, organic brain syndrom, emotional or mental illness, and specific learning disabilities. 29 C.F.R. § 1630.2(h).

There are two apparent ways in which individuals fall within th[e] statutory definition [of "regarded as" disabled, 42 U.S.C. § 12102(2)(C)]: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton, id.* "In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* "These misperceptions often 'resul[t] from stereotypic assumptions not truly indicative of . . . individual ability.'" *Id.* (citing 42 U.S.C. § 12101(7)).

Viewing the facts in the light most favorable to Plaintiff as the nonmoving party, there are disputed facts concerning whether Defendant regarded Plaintiff as disabled and whether such perception impacted Defendant's decision not consider Plaintiff for the position. Therefore, summary judgment must be denied.

### 3. Major Life Activity

Plaintiff asserts that Ms. Covelli treated Plaintiff as significantly restricted in her ability to perform, not only the Account Manager job, but many other jobs as well. Plaintiff claims that Ms. Covelli made frequent comments about her absences to other co-workers. Further, Plaintiff claims that Ms. Covelli's e-mail is evidence of Ms. Covelli regarding her as limited in the major life activity of working.

As to the major life activity of working, [t]he inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working; instead, an individual must show a significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes. *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 200 (2002)(quoting *Sutton v. United Air Lines*, 527 U.S. 471, 492 (1999)); *see also Bristol v. Bd. of County Commissioners of the County of Clear Creek,* 281 F.3d 1148, 1161-62 (10th Cir. 2002), *vacated in part on rehearing on other grounds*, 312 F.3d 1213 (10th Cir. 2002).

The EEOC [has] identifie[d] several factors that the courts should consider when determining whether an individual is substantially limited in the major life activity of working, including the geographical area to which the individual has reasonable access, and "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area from which the individual was disqualified. *Sutton*, 527 U.S. 471 at 491-492 (quoting 29 C.F.R. §§ 1630.2(j)(3)(ii)(A), (B)). To be substantially limited in the major life activity of working, then, one must be precluded

from more than one type of job, a specialized job, or a particular job of choice. *Id.* at 492.

I find that there are genuine issues of material fact as to whether the Plaintiff is regarded as having an impairment that substantially limits the major life activity of working. Here, I find that there are factual disputes as to whether Defendant regarded Plaintiff as substantially limited in the major life activity of working based on Ms. Covelli's e-mail. Accordingly, on the record before me, I must deny summary judgment as to whether Plaintiff is disabled within the meaning of the ADA.

IV. Whether Plaintiff's Perceived Disability Played a Role in Ms. Oskarson's Promotion to Accounting Manager

Defendant asserts that Plaintiff alleged perceive disability played no role in the decision to promote Ms. Oskarson to the position of Accounting Manager. Defendant contends that Ms. Covelli did not even consider Plaintiff for the Accounting Manager position before promoting Ms. Oskarson. The McDonnell Douglas burden shifting framework applies to ADA cases. *Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152, 1164 (10th Cir. 2002). "After establishment of a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual--i.e., unworthy of belief." *Id.* Demonstrating pretext gets plaintiff over the hurdle of summary judgment. *Id.*

Plaintiff has provided evidence of Ms. Covelli making comments that Plaintiff

was never in attendance at work, that Plaintiff had a lot of medical problems, and that Plaintiff could not survive her management style.  Viewing the facts in the light most favorable to the nonmoving party, I find that there are genuine issues of material fact as to whether Defendant's proffered reason for promotion decision is pretextual.

V.  Whether Plaintiff Has Suffered Compensable Economic Damages Under the ADA

Defendant asserts that because Plaintiff voluntarily terminated her employment and neither pleads nor can prove that any constructive discharge occurred, she is precluded from recovering economic damages from Defendant as a matter of law.  In Plaintiff's Response to Motion for Summary Judgment, Plaintiff acknowledges that she in not alleging constructive discharge.  Instead, Plaintiff asserts that she is entitled to compensatory damages and attorneys' fees under the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).  Plaintiff's Response to Motion for Summary Judgment is inconsistent with her Amended Complaint where she requests actual economic damages to be established at trial.  Therefore, I will address the issue of whether Plaintiff is entitled to economic.

The provisions of the ADA explicitly provide that the remedies available for a violation are those available under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and 42 U.S.C. § 12117(a).  *Hogue v. MQS Inspection*, 875 F. Supp. 714, 724 (D. Colo. 1995) (internal citations omitted).  Additionally, remedies for intentional unlawful employment practices may include reinstatement with back pay.  *Id.*  However, "[u]nless the employee was constructively discharged, [s]he would not be entitled to back pay, interest and retirement from the date of [her] resignation.  [Her] damage would be

11

measured by the difference between actual pay and the amount [s]he would have made had [s]he not been discriminated against until [s]he quit." *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342 (10th Cir. 1986) (quoting *Muller v. United States Steel Corp.,* 509 F.2d 923, 930 (10th. Cir.), *cert. denied*, 423 U.S. 825 (1975) (internal brackets omitted)).

Thus, I conclude that because Plaintiff is not alleging that she was constructively discharged, she is only entitled to only the difference in pay between what she earned as a Senior Accounting Clerk and what she would have earned as Accounting Manager. That difference according to the record is zero. I find that as a matter of law, Plaintiff is not entitled to the equitable remedy of back pay. Accordingly, summary judgment is granted as to Plaintiff's attempt to recover back pay under the ADA.

VI.  Conclusion

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's claim under the ADA. It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's attempt to recover back pay under the ADA.

Dated: November 27, 2007

                                            BY THE COURT:

                                            s/ Wiley Y. Daniel
                                            Wiley Y. Daniel
                                            U. S. District Judge